THEODORE CALAM LAWRENCE, Plaintiff, *v.* T. HENRY CALAM and FIRST PRESBYTERIAN CHURCH OF OSSINING, N. Y., Defendants.

Second Department, July 22, 1922.

Wills — construction — devise to son subject to payment of one-half income to husband and in case son should die without issue entire income to husband — will also provided that on death of husband and of son without issue, one-half should go to church and other half to heirs — son survived — fee absolute will not be cut down by subsequent ambiguous terms — will providing for disposition where first devisee dies without issue refers to death during life of testatrix — son takes entire property.

Where by the terms of a will a fee simple absolute is given to a devisee, it will not be cut down or limited by subsequent ambiguous words.

Ordinarily a will providing for the disposition of property where the first devisee dies without issue, refers to death during the lifetime of the testatrix; but this rule of construction yields to slight evidence, found in the terms of the will, indicating that the testatrix intended death at any time.

Under a will giving all the real and personal property of the testatrix to her son subject to payment of one-half the rents and income to her husband, which provided in a subsequent clause that in case the son should die without leaving any lawful issue then " from his death " all the rents and income should go to the husband, and which contained a further provision that " at the decease of my said husband * * * and the decease of my said son * * * without lawful issue him surviving " one-half of the property should go to a church and the other half to the heirs at law of the testatrix to be distributed among them according to the law of descent, the son takes all of the property absolutely, for the death of the son mentioned in the will refers to death during the lifetime of the testatrix.

KELBY, J., dissents, with opinion.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act, for the purpose of

obtaining a construction of the last will and testament of Sarah Elizabeth Lawrence, deceased.

*Joseph H. A. Symonds* [*Claude L. Coon* with him on the brief], for the plaintiff.

*Milton C. Palmer*, for the defendant T. Henry Calam.

BLACKMAR, P. J.:

Sarah Elizabeth Lawrence died in White Plains, Westchester county, September 1, 1915, at the age of sixty-six years. She left a last will and testament which has been duly admitted to probate by the Surrogate's Court of the county of Westchester. The said will reads in part as follows:

" *Second*, I give devise and bequeath to my son Theodore Calam Lawrence and to his heirs forever all my property both real and personal subject however to the payment and retention by my husband of the one half of the rents interest and income of all my said property both real and personal during his natural life to be kept by him and paid to him out of said rents interest and income semiannually from my decease.

" *Third*, In case my said son Theodore Calam Lawrence should die without leaving any lawful issue him surviving then and in that case from his death I give devise and bequeath to my husband all of the rents interest and income of all my said property both real and personal during his natural life.

" *Fourth*, And at the decease of my said husband Samuel Lawrence, and the decease of my said son Theodore Calam Lawrence without lawful issue him surviving, I give devise and bequeath to the Presbyterian Church of the Village of Sing Sing the one half part of all my property both real and personal and the other half to my heirs at law to be distributed among them according to the law of descent of the State of New York."

The will is dated August 2, 1892. At the time of the execution of the will the testatrix was forty-three years of age and resided with her husband, Samuel Lawrence, who was then fifty-nine years of age, and her son, Theodore Calam Lawrence (the plaintiff in this action), who was then in his sixteenth year. The brother of the testatrix, T. Henry Calam, one of the defendants herein, was at that time thirty-seven years of age, residing with his wife, and had two children living. Samuel Lawrence, the husband of testatrix, predeceased her, having died June 30, 1901. The son, Theodore Calam Lawrence, survived both parents and is now alive, married, without children.

The plaintiff claims to be the owner of all of the real property of the said decedent in fee simple, and of all the personal

property absolutely. The defendant Calam, brother of the testatrix, claims under said will a present estate in fee simple to one-half of all the decedent's real property and one-half of all of her personal property absolutely, defeasible upon the death of the plaintiff, Theodore Calam Lawrence, leaving lawful issue him surviving. Defendant First Presbyterian Church of Ossining, N. Y., the other defendant, claims under said will that it is entitled to one-half of the property, real and personal, of the decedent in the event of the death of the plaintiff, Theodore Calam Lawrence, without leaving issue him surviving. The decedent's estate consists of $27,410 realty, and personal property of $28,169.55, as appears by the report of the appraisers in the transfer tax proceeding.

I think the real question before us is whether the gift to the church and the heirs at law of the testatrix in the 4th paragraph of the will, is to take effect on the contingency of the death of the son without lawful issue him surviving in the lifetime of the testatrix, or generally at any time, either during her lifetime or after her death. If the former, then the plaintiff, the son, takes a fee simple absolute. If the latter, the son takes a defeasible fee subject to being divested by his death at any time without lawful issue him surviving, and the church and the heirs of the testatrix take a fee by way of conditional limitation.

There are some principles of construction which are of aid in solving this problem.

*First.* Where by the terms of the will a fee simple absolute is given to a devisee, it will not be cut down or limited by subsequent ambiguous words. To have such effect, the subsequent language must be clear and unmistakable. (*Tillman* v. *Ogren,* 182 App. Div. 672; affd., 227 N. Y. 495.)

*Second.* Ordinarily a will providing for the disposition of property where the first devisee dies without issue, refers to death in the testator's lifetime; but this rule of construction yields to slight evidence, found in the terms of the will, indicating that the testator intended a death at any time. (*Brown* v. *Gardner,* 233 N. Y. 261.)

The 2d clause in the will is couched in language apt to grant to the son a fee simple absolute. The words " from his death " in the 3d clause are urged by my brother KELBY in his dissenting opinion to show that this gift of income must refer to the death of the son after the decease of the testatrix. It is possible that, limited to that particular contingency, *i. e.,* the husband outliving the son, the testatrix referred to the death of the son without issue, occurring after her death. But the 3d clause was confined to securing to the husband a life estate in the remaining half of the property in case of the death of the son during the husband's

lifetime. It does not necessarily follow that the testatrix used the words in the 4th clause with that identical meaning, and that because she wished her husband to take the life estate in case the son should outlive her and die without lawful issue him surviving, she, therefore, intended to change the prior gift of the fee absolute to the son to a defeasible fee. We must push our inquiry further. Omitting for the present the reference to the husband in the 4th clause, the testatrix gives the estate to the church and to her heirs at law on the decease of her son without lawful issue him surviving. The question is whether the general rule that a gift of a fee is not cut down by subsequent ambiguous words, and that the death refers to death in the lifetime of the testatrix, must yield to the meaning spelled out from the use of the words "from his death" in the 3d clause. I think the provisions of the 4th clause in themselves sustain the application of the general rules. It is to be noted that the gift over as to one-half of the estate is to the heirs of the testatrix. If the death of the son refers to death after the decease of the testatrix, the son alone was the textatrix's heir. Defendant Calam is not the heir of testatrix. But as the testatrix evidently contemplated that some person or persons other than the son might take under the designation "heirs" in case of the son's death, she must have referred to his death in her lifetime.

The only way to avoid this inference of intent is to maintain that the word "heirs" is inartificially used and refers to those who would be heirs if the son did not survive her. The will with all its faults was apparently written by a draftsman who was acquainted with legal phraseology. I see no reason why we should give an incorrect meaning to the word "heirs" in order to overthrow the presumption that the gift made in language competent to vest a fee absolute is cut down to a defeasible fee, and to avoid the presumption that the death of the son refers to death in the testatrix's lifetime.

There should be judgment accordingly, with costs to all the parties separately appearing payable out of the estate.

RICH, JAYCOX and YOUNG, JJ., concur; KELBY, J., reads in dissent.

KELBY, J. (dissenting):

I dissent. The provisions of the will taken as a whole indicate that when the testatrix referred to the decease of her son Theodore without lawful issue, she meant his decease after her own death. Clearly this is so under paragraph 3 of the will, which reads: "In case my said son * * * should die without leav-

ing any lawful issue him surviving *then and in that case from his death* I give devise and bequeath to my husband all of the rents * * * during his natural life." If it were not so, and the son died survived by both mother and father, we would have the resulting anomaly of the husband's life estate commencing its term before the death of the testatrix.

Nor can I see any reason for holding that the words " at the decease of my said husband * * * and [at] the decease of my said son * * * without lawful issue him surviving," as used in paragraph 4 of the will, refer to the death of the· son during the lifetime of the testatrix. The intent as I read it is not to make the provisions for the Presbyterian Church and the heirs of testatrix substitutionary devises, but rather conditional limitations to take effect on the death of the son without issue. (*Tyndall* v. *Fleming*, 123 App. Div. 837; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Mead* v. *Maben*, 131 id. 255; *Brown* v. *Gardner*, 233 id. 261.)

Judgment directed for the plaintiff in accordance with opinion by BLACKMAR, P. J., costs to all parties who have appeared separately payable out of the estate. Settle order on notice.